UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ZACHERY R. ALOLABI, NAPOLI'S #6 PIZZERIA & ITALIAN RESTAURANT, INC., and NAPOLI #7 FLYING PIZZA, INC., | § § § § | |
| | § | Case No. _____ |
| *Plaintiffs*, | § § | |
| v. | § § | |
| WCX, LLC and WILSON COTRIM, Individually, | § § § | |
| *Defendants*. | § § | |

**PLAINTIFFS' ORIGINAL COMPLAINT AND REQUEST FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

Plaintiffs Zachery R. Alolabi, Napoli's #6 Pizzeria & Italian Restaurant, Inc. and Napoli #7 Flying Pizza, Inc. (collectively, "Napoli") file this Complaint for trademark and trade dress infringement under § 43(a) of the Lanham Act, violation of the Computer Fraud & Abuse Act (hereinafter, "CFAA"), 19 U.S.C. § 1030(a)(2), violation of the Stored Wire and Electronic Communications and Transactional Record Access Act, 18 U.S.C.A. § 2701, and misappropriation of trade secrets. Plaintiffs also bring claims under Texas law pursuant to this Honorable Court's pendant jurisdiction for conversion, tortious interference with prospective business relations, the Texas Theft Liability Act, and breach of contract, and seek a temporary restraining order, preliminary injunction, permanent injunction, and damages against the named Defendants. Plaintiffs state as follows:

## I.     INTRODUCTION

1.     Plaintiff Zachery R. Alolabi is a Houston restaurateur who seller-financed the sale of two (2) of his restaurants owned by his companies (Napoli's #6 Pizzeria & Italian Restaurant,

Inc. and Napoli #7 Flying Pizza, Inc., respectively) to Defendant WCX, LLC.  Defendant Wilson Cotrim is the managing member and owner of WCX, LLC.  In the time since the sale of these restaurants was consummated, WCX, LLC has breached its obligation to pay amounts due under promissory notes, as well as additional amounts required under the sales agreements to license the name, trade dress, and trade secret information of Napoli.

2.      Additionally, Defendants WCX, LLC and Wilson Cotrim deceived Napoli's web designer into transferring Napoli's web domain, www.napolirestaurants.com, to Cotrim's GoDaddy.com account.  Defendants then stripped all reference to Plaintiffs' restaurants from the Napoli website, diverted all online orders placed through the website solely to the restaurants purchased by them, and set up a page on the site soliciting franchisees in violation of Plaintiffs' protected intellectual property rights.  Defendant Cotrim also persuaded Plaintiff Alolabi to allow him access to the Napoli Facebook page, to which Cotrim then changed the password to exclude Plaintiffs from further access and control and similarly co-opted the Napoli Facebook page for the sole promotion of his restaurants.  WCX, LLC and Wilson Cotrim are liable to Plaintiffs for their unlawful appropriation of the web domain and subsequent diversion of customers under both federal and Texas law.  Plaintiffs seek a temporary restraining order and preliminary injunction directing WCX, LLC and Wilson Cotrim to immediately restore access, control, and documented ownership of the web domain, as well as and access and control of the Napoli Facebook page, and a permanent injunction against any further attempts to gain control of or otherwise interfere with Plaintiffs ownership and control of the use and contents of the domain, website, and Facebook page.  Plaintiffs also seek damages.

## II.     PARTIES

3.     Plaintiff Zachery R. Alolabi, an individual, is the owner and proprietor of Napoli Italian Pizza & Pasta, 5035 Hwy. 6N Houston, Texas 77084 ("Highway 6N Napoli"), Napoli Italian Pizza & Pasta, 5266 Beechnut Street, Houston, Texas 77036 ("Beechnut Napoli"), and Napoli Italian Pizza & Pasta, 14743 Memorial Drive, Houston, Texas 77079 ("Memorial Napoli") (collectively "Napoli").

4.     Plaintiff Napoli's #6 Pizzeria & Italian Restaurant, Inc. ("Napoli #6") is a Texas corporation with its principal place of business in Harris County, Texas.

5.     Plaintiff Napoli #7 Flying Pizza, Inc. ("Napoli #7") is a Texas corporation with its principal place of business in Harris County, Texas.

6.     Defendant WCX, LLC ("WCX") is a Texas Limited Liability Company with its principal place of business in Harris County, Texas. Service of Citation in Texas may be effectuated on its registered agent, Wilson Cotrim at 25442 China Springs, Spring, Texas 77373 or wherever he may be found.

7.     Defendant Wilson Cotrim ("Cotrim") is a resident of Harris County and the State of Texas. Service of Citation may be effectuated at his home located at 25442 China Springs, Spring, Texas 77373 or wherever he may be found.

## III.     JURISDICTION AND VENUE

8.     The Honorable Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1331.   Plaintiffs assert claims herein invoking the Court's federal question jurisdiction under the Lanham Act, 15 U.S.C. § 1125, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2), and the Stored Wire and Electronic Communications and Transactional Record Access Act, 18 U.S.C. § 2701.   Supplemental jurisdiction over the state law claims is

predicated on 28 U.S.C. § 1367.  The state law claims are so related to the federal question claims that they form part of the same case or controversy.

9.    Venue is proper in this district under 28 U.S.C. § 1391 because Defendants reside in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## IV.    FACTS

10.    On or about April 18, 2014, Plaintiff Napoli #7 and Defendant WCX entered in an agreement to acquire the assets of Plaintiff's Napoli Italian Restaurant located in Pasadena, Texas for $170,000.00, as well as an agreement to pay an additional $1,000 monthly fee "for the use of the name 'Napoli', 'Napoli Restaurants' and 'By Pappa Zack', and support like creating new recipes, and his availability for marketing campaigns," an additional amount for continuing support and training, and a success bonus contingent on an increase in gross sales in the 12 month period after closing.  See Exhibit 1 (Napoli #7 agreement documents).

11.    To help Defendants finance the acquisition, Napoli #7 agreed to take back a Promissory Note in the amount of $80,000.00 secured by a UCC-1 lien and Defendant Cotrim's personal guaranty.

12.    Upon information and belief, Defendant Cotrim is the President, Director and sole owner of Defendant WCX and personal guarantor of the WCX Promissory Notes to Plaintiffs, and other contracts at issue herein.

13.    The amount of the Promissory Note for the acquisition of the Napoli #7 restaurant plus Five Percent (5%) interest was to be repaid in Seventy-Two (72) payments, as detailed in the Note.  The Note contained a "Clawback" provision allowing Napoli to judicially compel

Defendants to assign a controlling interest in Defendant WCX to Napoli #7 in the event of default.[1]

14.     About five months later, on or about September 5, 2014, Plaintiff Napoli #6 and Defendant WCX entered in an agreement to acquire the assets of Plaintiff's Napoli Italian Restaurant's Richmond location for $50,010.00 and other fees.  Like the agreement regarding the acquisition of Napoli #7, this agreement also required payment of the additional $1,000 monthly fee for use of the Napoli trade names, support, and availability for marketing campaigns, as well as an additional amount for continuing support and training and a success bonus contingent on a specified increase in gross sales from March 1, 2014 through February 28, 2015.  See Exhibit 2 (Napoli #6 agreement documents).

15.     Again, to help Defendants finance the acquisition, Napoli #6 agreed to take back two Promissory Notes (the "Notes") in the amounts of $30,000.00 and $20,000.00, which were also secured by Defendant Cotrim's personal guaranty.  See Exhibit 3 (Napoli #6 promissory notes).

16.     The Notes for the acquisition of the Napoli #6 restaurant also contained "Clawback" provisions allowing Napoli #6 to judicially compel Defendants to assign a controlling interest in Defendant WCX to Napoli #6 in the event of default.

17.     The Napoli domain and website, www.napolirestaurants.com, originally purchased by Plaintiff Alolabi, have at all times relevant to this lawsuit been registered through and hosted by GoDaddy.com.  Pursuant to an oral agreement with Plaintiff Alolabi, Defendants were to be allowed access to the Napoli website for the limited purpose of checking email accounts associated with that domain, and to update the information specific to the Napoli #6 and

---

[1] As of the time of filing, this promissory note is not in default and not (yet) a subject of this suit.

Napoli #7 locations.  The Napoli domain was originally purchased by Plaintiff Alolabi, and both the domain and website were set up and maintained for the benefit of Plaintiffs, to advertise Napoli goods and services and for the information and use of customers.  See Exhibit 4 (Affidavit of Zachery R. Alolabi) and Exhibit 9 (Affidavit of James Eisenlohr).

18.     In November 2014, Cotrim and/or WCX exceeded the limit of their authorized access to the password-protected Napoli domain and website.  Defendant Cotrim capitalized on the misunderstanding of Napoli's web designer, James Eisenlohr ("Eisenlohr"), as to the nature and scope of the oral agreement between Plaintiff Alolabi and Defendant Cotrim.  Instead of arranging for Defendant Cotrim to have access to the websites files for purposes of updating the information specific to the Napoli #6 and Napoli #7 locations, Eisenlohr was persuaded to transfer Napoli web domain from Eisenlohr's GoDaddy account to Cotrim's GoDaddy account.  Cotrim subsequently stripped all mention of Plaintiffs' restaurant locations from the website, leaving only the information and online ordering and inquiry capabilities for Cotrim and WCX's Pasadena and Richmond restaurant locations.  See Exhibits 4 and 9.

19.     The Defendants continued misappropriation of the Napoli website is responsible for past and present diminution in the number of online orders to Plaintiffs' restaurants, orders that otherwise would have been placed through the Napoli website.  As a result, Plaintiffs experienced and continues to experience losses of revenue and damage.  During the period from February 16, 2015 to April 5, 2015 alone, Defendants' appropriation of the website is estimated to have cost Napoli approximately $4,501.53 in lost revenues due to the diversion of online orders received through the Napoli website.  See Exhibit 4.

20.     Defendants' improper appropriation of the Napoli website, to the continued exclusion of Plaintiffs, required Napoli to incur a loss of $5,113.38 for the expense of building a new website for Napoli products and services.  See Exhibit 4.

21.     Defendants have further used the misappropriated Napoli website to improperly solicit franchisees using Napoli's name, brand, likeness and trade secrets.  See Exhibit 5 (May 28, 2015 printout from www.napolirestaurants.com/FRANCHISE.html webpage).

22.     Additionally, Defendant Cotrim was provided administrator access to the Napoli Facebook page, which can be found at https://www.facebook.com/NapoliRestaurantTX (the "Napoli Facebook page") for the limited purpose of adding and updating information regarding the Napoli #6 and Napoli #7 restaurants.  See Exhibit 4.  Cotrim then unlawfully excluded Plaintiffs from further access to and control of the Napoli Facebook page, and commandeered the Napoli Facebook page for the sole use and benefit of the Napoli #6 restaurant.

23.     On January 20, 2015, Plaintiffs formally demanded payment from Defendants in the amount of $8,316.66 and gave Defendants the applicable cure period prior to exercising its right to accelerate the Note.  The January 20, 2015 letter also advised WCX and Cotrim of their violation of the Temporary Concession Agreement regarding the TABC permit for the Napoli #7 location and demanded that Defendants either obtain their own TABC permit or cease and desist from selling alcohol at that location.  The January 20, 2015 letter further demanded that WCX and Cotrim "immediately return the Napoli internet domain password," noting that "[a]lthough Napoli gave you permission to check the email accounts associated with that domain, in no way did Napoli agree to you taking over that website."  See Exhibit 6 (January 20, 2015 "Default and Demand for Payment - $8,316.66" letter).

24.     On February 2, 2015, via email to Defendants' counsel, without waiving its rights or remedies, Plaintiffs gave Defendants one additional opportunity to cure its default prior to acceleration and as a courtesy, extended the acceleration date to February 4, 2015.

25.     When no payment was made whatsoever, on February 6, 2015, Plaintiffs formally accelerated Promissory Note No. 2 for the Napoli #6 restaurant and demanded immediate payment of the total indebtedness under that note.  The February 6, 2015 letter included a second demand that Defendants either obtain their own TABC permit or immediately cease and desist from selling alcohol, and a second demand that Defendants return control of the Napoli internet domain.  See Exhibit 7 (February 6, 2015 "Notice of Acceleration; 2nd Cease and Desist" letter).

26.     On March 3, 2015, Plaintiffs formally demanded full payment from Defendants for Promissory Note No. 1 for the Napoli #6 restaurant in the amount of $30,000, as the note had matured and this amount was due and payable as of March 1, 2015.  The March 3, 2015 letter also demanded payment of the $1,000 per month fee for use of the Napoli trade names and continuing support, as required under the Asset Purchase Agreements for the Napoli #6 and Napoli #7 restaurant locations, and once again demanded return of ownership and control over the Napoli domain and website.  The March 3, 2015 letter further indicated Napoli's intent to declare an Event of Default under Promissory Note No. 1, the Sublease for the Napoli #7 restaurant location, and the Asset Purchase Agreements for both the Napoli #6 and Napoli #7 restaurants.  See Exhibit 8 (March 3, 2015 "Default, Demand for Payment" letter).

27.     To date, the Defendants continue to use the Napoli name, brand and likeness at the Napoli #6 and Napoli #7 restaurant locations, and in connection with the goods and services provided at and by those restaurant locations, despite their continuing failure to pay the licensing fees for such use required under the respective Asset Purchase Agreements.

28.     The monetary defaults of the Defendants to date include the following:

1.     $30,000.00 due under "Promissory Note No. 1" (Richmond);

2.     $20,000.00 due under "Promissory Note No. 2" (Richmond);

3.     $2,400.00 attorney's fees due under "Promissory Note No. 2";

4.     $10,000.00 in fees due under the Asset Purchase Agreements for use of the Napoli restaurant names from January through May 2015;

5.     Late Fees due under the Pasadena Sublease Agreement for January 2015.

29.     In addition to monetary defaults, the following non-monetary defaults (the "Non-Monetary Defaults") are attributable to Defendants:

1.     Failure to comply with Plaintiffs' demands that Defendants obtain their own TABC permits, and cease and desist selling alcohol at the Napoli #6 and Napoli #7 locations in violation of the Temporary Concession Agreements regarding permits for those locations issued to Plaintiffs; and

2.     Failure to return Napoli intellectual property (passwords, internet domain and websites, emails, *etc*.) as demanded by Plaintiffs.

## V.     CLAIMS

## CLAIM I – VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030 (THE "CFAA")

30.     Plaintiffs hereby adopt and reallege each and every allegation previously set forth in this Complaint as if fully set forth here.  The Computer Fraud and Abuse Act (the "CFAA") prohibits anyone from intentionally accessing a protected computer, either without authorization or in excess of the individual's authorized access, and obtaining information from that computer. 18 U.S.C. § 1030(a)(2)(C)

31.     To facilitate his theft of data, impairment of the availability of data, and the interruption of the use and benefit of the web domain and website hosting services provided by GoDaddy.com, Defendant Cotrim accessed one or more protected computers used in interstate

commerce and communication,[2] without authorization and/or by exceeding his authorized access on the website.

32.     Through his unauthorized access to the Napoli domain and website, Defendants intentionally, knowingly, and with the intent to defraud, misappropriated the website's valuable business information and functions, resulting in loss and damage to Plaintiff Alolabi.  The losses suffered include more than $5,000 that Plaintiff Alolabi spent to investigate and respond to Defendants' unlawful conduct, including but not limited to costs associated with analyzing and assessing the extent of damage caused to Napoli by Defendants unauthorized access and theft of the domain, website, information, and concomitant interruption of service, as well as the cost of constructing a replacement website as a stopgap measure to mitigate the loss of business caused by Defendants' misappropriate and theft of the Napoli website.

33.     The acts of Defendants described herein constitute violations of 18 U.S.C. § 1030(a)(2), 18 U.S.C. § 1030(a)(4), and 18 U.S.C. § 1030(a)(5), for which Napoli is entitled to seek actual damages, including lost profits, punitive damages, and recovery of attorneys' fees, as well as injunctive relief under 18 U.S.C. § 1030(g).

### CLAIM II – VIOLATION OF THE STORED WIRE AND ELECTRONIC COMMUNICATIONS AND TRANSACTIONAL RECORDS ACCESS ACT, 18 U.S.C. §§ 701, 2707

34.     Plaintiffs hereby adopt and reallege each and every allegation previously set forth in this Complaint as if fully set forth here.  It is unlawful under the Stored Wire and Electronic Communications and Transactional Records Access Act (the "Stored Communications Act") for

---

[2] "GoDaddy . . . has tried to restrict its physical presence to Arizona.  Its computer servers, which handle most of the work of registering and maintaining the domains that GoDaddy's customers buy, are all located in Arizona."  *uBid, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 423 (7th Cir. 2010).  Regardless of the physical location of the particular GoDaddy server or servers accessed by Defendants in connection with the events described here, these servers are clearly used in interstate commerce as GoDaddy provides domain and website hosting services throughout the United States.

a person to intentionally access, without authorization, a facility through which an electronic communications service is provided, or to intentionally exceed an authorization to access that facility, and thereby obtain or prevent authorized access to an electronic communication while it is in electronic storage in such system. 18 U.S.C. § 2701(a).

35.     When the provisions of the Stored Communications Act are violated knowingly or intentionally, a person aggrieved by the violation may seek injunctive relief, equitable relief, declaratory relief, actual damages, and attorney fees and litigation costs.  18 U.S.C. § 2707(a)-(c).  If the violation is willful or intentional, the aggrieved party may also seek punitive damages. 18 U.S.C. § 2707(c).

36.     GoDaddy.com's domain and website hosting services are a facility through which electronic communications services are provided within the scope of the Stored Communications Act.   See 18 U.S.C. 2711(2) (defining remote computing services under the Stored Communications Act to include "provision to the public of computer storage or processing services by means of an electronic communications system).  The GoDaddy domain and website hosting services allow businesses to communicate electronically with their customers.  In the present case, the services provided by GoDaddy allowed Napoli to communicate with its customers for purposes of placing online orders and providing customers with information regarding its menu, location, hours, and sales.

37.     Defendant Cotrim exceeded his limited authorized access to the password-protected Napoli domain and website, and deceived Napoli's web designer into transferring the domain to Cotrim's GoDaddy account.  Defendants misappropriated and took exclusive control of the entire Napoli domain and website, stripped it of all reference to Plaintiff Alolabi's restaurants, barred Plaintiff Alolabi from further access to the website, thereby funneling all

online orders and inquiries through the website solely to Defendants' restaurants.  These actions caused actual damages to Plaintiff Alolabi as described above, including but not limited to costs associated with investigating, analyzing, and attempting to remedy Defendants' wrongful conduct, and the cost of creating a new website to mitigate the loss of business occasioned by Defendants' misappropriation and theft.  As the Defendants were contemporaneously aware of the limits of their authorized access to the Napoli domain and website, and thus were also undeniably aware of the unauthorized, unlawful, and tortious nature of their conduct, Plaintiffs seek punitive damages.

### CLAIM III - TRADEMARK AND TRADE DRESS INFRINGEMENT UNDER SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a), AND CHAPTER 16 OF THE TEXAS BUSINESS & COMMERCE CODE

38.    Plaintiffs hereby adopt and reallege each and every allegation previously set forth in this Complaint as if fully set forth here.

39.    The unauthorized use of the trademark, service mark, trade dress, and/or trade name of another violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and the protections afforded under Tex. Bus. & Comm. Code §16.001 et seq.  Defendants have infringed and/or diluted Plaintiff Alolabi's protected interest under the Lanham Act by their continued wrongful and infringing use of the Napoli names ("Napoli," "Napoli Restaurants," and "By Pappa Zack"), and the inherently distinctive visual presentation of Napoli's products and services to customers that serves the primary purpose of identifying Napoli as the source of the goods and services.  Defendants have not paid the fees agreed to and required for their continued use of the Napoli names, trade dress, and related visual presentations of Napoli's products and services protected under the Lanham Act and the Texas Business & Commerce Code.

40.     Napoli's trade dress and names are descriptive and have a secondary meaning among consumers as evidenced by the length of time and manner in which they have been used, volume of Napoli's sales, the amount and manner of Napoli advertising, and the Defendants' intentional copying and/or appropriating Plaintiffs' trade dress for the benefit of their restaurants. The secondary meaning associated with Plaintiffs' trade dress and names creates a protectable interest in the Napoli names and trade dress under the Lanham Act.   Stated alternatively, Napoli's trade dress and names have an acquired distinctiveness in this geographic area of the state, as evidenced by the duration, extent, and reach of Napoli's advertisement and publicity, as well as the amount and volume of their sales of goods and services, which entitles Plaintiffs to similar protection of their trade marks, service marks, and/or trade dress under the provision of Chapter 16 of the Texas Business & Commerce Code.

41.     Defendants' infringement and/or dilution has caused and is likely to continue causing confusion as to the source, sponsorship, and/or approval of the goods and services provided.   Furthermore, Defendants' use of Plaintiffs' protected trade dress infringes Plaintiffs' interest in the distinctive name and visual presentation of Napoli's product, and Plaintiffs' interest in protecting the reputation and quality standards associated with their goods and services in the minds of their customers and the consuming public generally.   Defendants have also engaged in conduct designed to infringe upon and dilute Napoli's protected interests by purporting to have their own protected interest and authority to license the Napoli name, trademark, service mark, trade dress, trade name, and inherently distinctive visual presentation of Napoli's products and services to customers through their inclusion of the "Franchise" page on the misappropriated Napoli website.

42.     Accordingly, Plaintiff Alolabi brings claims against Defendants under the authority of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, and seeks recovery of profits from Defendants from the infringement and/or dilution, and actual damages and costs, and attorney's fees, as provided by 15 U.S.C. § 1117.  Additionally or in the alternative, Plaintiff Alolabi seeks judgment against Defendants under Tex. Bus. & Comm. Code § 16.104(c) for three times the total amount of profits they realized and the damages suffered as a result of Defendants' knowing and bad faith infringement of Plaintiffs' protected interests by misappropriating the Napoli domain and website and the diversion of business and/or interference with online orders being placed with Plaintiff Alolabi's restaurants.

43.     Plaintiffs also seek preliminary and permanent injunctive relief against Defendants under both the Lanham Act, 15 U.S.C. § 1116(a), and Tex. Bus. & Comm. Code § 16.103(c) to preclude further infringement and dilution of the Napoli names through the Napoli website and Napoli Facebook page.

## CLAIM IV – MISAPPROPRIATION OF TRADE SECRETS

44.     Plaintiffs hereby adopt and reallege each and every allegation previously set forth in this Complaint as if fully set forth here.

45.     Texas recognizes a cause of action for the misappropriation of trade secrets where a defendant discloses or uses a trade secret in violation of a contractual or confidential relationship with the owner of the trade secret, for example by continuing to use trade secret information after the license agreement permitting its use lapses or expires.  Tex. Civ. Prac. & Rem. Code §§ 134a.001-134a.008.  Trade secrets are defined as any formula, pattern, device, or compilation of information that is used in its owner's business, and which gives its owner an opportunity to obtain advantage over competitors who do not know or use it.

46.     Plaintiff Alolabi's recipe, [3] recipe books, ingredient information, supplier identities and operations manuals compiled and prepared by Alolabi for his Napoli restaurants were not generally known to Napoli's competitors and represent critical proprietary information belonging to Plaintiff Alolabi.   Such information gives Plaintiff Alolabi and the Napoli restaurants an advantage over competitors who do not know or otherwise have access to this trade secret information.  The trade secret information specified here is not information generally known in the industry, but instead consists of information accumulated by Plaintiff Alolabi during his many years as a successful chef and restaurateur.

47.     Defendants misappropriated the trade secret information by acquiring the information through misrepresentations that Defendants would pay the amounts owed under the promissory notes and agreements pertaining to the Napoli #6 restaurant in accordance with the terms of the promissory notes and agreements.  See Tex. Civ. Prac & Rem. Code § 134A.002(2) (defining "improper means" to include acquisition by misrepresentation).   Defendants also misappropriated the trade secret information at issue by continuing to use the information after being advised of their defaults and violations of the terms of the agreements pertaining to the Napoli #6 restaurant, which gave rise under the circumstances to a duty on the part of Defendants' to limit its use.  See *id*. § 134A.002(3)(B)(ii)(b).

48.     Defendants violated their obligations to Plaintiff Alolabi by improperly continuing their use of Plaintiff Alolabi's trade secret information after defaulting on the promissory notes given for the purchase of the Napoli #6 restaurant, breaching material terms of

---

[3] Recipes are protectable as trade secret information.  *See, e.g.*, *H.E. Butt Grocery Co. v. Moody's Quality Meats, Inc.*, 951 S.W. 2d 33, 35-36 (Tex. App.—Corpus Christi 1997, pet. denied) (finding recipe protected as trade secret under Texas common law).  The same rationale for protecting recipes as trade secret information applies to compilations of recipes and ingredient information.  *See Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 365 (5th Cir. 2000) (recognizing that trade secret protection can extend to "any formula . . . or compilation of information").

the agreements for purchase of the Napoli #6 restaurant (including, notably, failure to pay supporting fees), and continuing the use of Plaintiff Alolabi's trade secret information despite their failure to cure the aforementioned defaults and breaches.

49.     Defendants continued disclosure and/or use of Plaintiff Alolobi's trade secrets constitute a misappropriation and, as such, entitles Alolabi to recover from them all damages proximately caused by same.   The continued use and disclosure of such trade secrets has provided Defendants with an unfair competitive advantage by virtue of saving Defendants significant research and development costs through their misappropriation of Plaintiff Alolabi's trade secret information, information that Defendants have used in their campaign to unfairly compete and tortuously interfere with Plaintiff Alolabi's prospective business relationships through interference with his other restaurants' ability to receive online orders and inquiries as described herein.

50.     Plaintiff Alolabi seeks damages for Defendants' misappropriation, which may be calculated as Defendants' profits during the period they have not paid for the use of this trade secret information as damages allowed under Tex. Civ. Prac. & Rem. Code §134A.004(a) to remedy Defendants' unjust enrichment.   Additionally, as a result of Defendants' misappropriation of trade secrets and other confidential information, Plaintiff Alolabi is entitled to recover punitive damages against Defendants, in addition to actual and consequential damages to which Plaintiff Alolabi may be entitled, based on Defendants' willful and malicious misappropriation of Plaintiffs' trade secret information.   Tex. Civ. Prac. & Rem. Code § 134A.004(b).  Plaintiff Alolabi also seeks recovery of prejudgment and post-judgment interest as allowed by law and all costs of court.

16

## CLAIM V – CONVERSION

51.     Plaintiffs hereby adopt and reallege each and every allegation previously set forth in this Complaint as if set forth fully at length here.

52.     Plaintiff Alolabi owned, had legal possession of, and/or was entitled to possession of its domain, website,[4] and incorporated functionality.  Plaintiff Alolabi additionally owned, had legal possession of, and/or was entitled to possession of the online orders and inquiries placed through the Napoli website.

53.     Cotrim, unlawfully and without authorization, assumed and exercised dominion and control over the domain, website, and online orders and inquiries place through the website to the exclusion of and/or inconsistent with Napoli's rights as the purchaser and owner. Defendant Cotrim exceeded his authorized access under the oral agreement with Plaintiff Alolabi, and used deceptive means to obtain ownership and exclusive control of the domain and website.  Defendants' used their wrongful and unlawfully obtained access to exert dominion and control over the domain and website, to strip the website of all reference to Plaintiffs' restaurants, and to divert all online orders and inquiries for Defendants' sole benefit.

54.     As a direct result of Defendant Cotrim's conversion of Napoli's domain and website, Plaintiff Alolabi suffered damages, including lost profits and expenses associated with setting up an alternate website as described above.

55.     Because Defendant Cotrim's conduct was intentional and malicious, Plaintiff Alolabi is also entitled to, and seeks, exemplary damages.

---

[4] In accordance with principles of copyright law, a website is personal property that is owned by the hiring party who employs a web designer to create a website.  *Sprinkler Warehouse, Inc. v. Systematic Rain, Inc.*, 859 N.W.2d 527 (Minn. Ct. App. 2015); *see also State v. Kirby*, 161 P.3d 883, (N.M. 2007) (noting that ownership under copyright principles remains with website designer "unless the hiring party could prove . . . that the designer was acting as the hiring party's employee for hire or as a joint author.")

## CLAIM VI – TORTIOUS INTERFERENCE
## WITH PROSPECTIVE BUSINESS RELATIONS

56.     Plaintiffs hereby adopt and reallege each and every allegation previously set forth in this Complaint as if set forth fully at length here.

57.     Cotrim knew of Napoli's reliance on its website and, in particular, the online ordering function of the website to customers.

58.     Prior to Cotrim's hijacking of the Napoli domain and website, Napoli derived thousands of dollars per month of sales from its website-based ordering and catering functionality.

59.     In light of these facts and circumstances, there was a reasonable probability that Napoli would have entered into business relationships with new and returning online customers placing orders and inquiries through Napoli's website but for Defendants' wrongful interference.

60.     In order to exclude Plaintiffs from receiving online orders and inquiries, thus retaining all revenues generated through the Napoli website for the sole benefit of Defendants, the Defendants intentionally hijacked the Napoli website as described above.   Defendants intentionally and maliciously exceeding Cotrim's authorized access and, by deleting all mention of Plaintiffs' restaurants, directed all catering and online orders to the two (2) restaurants under Defendants' control while preventing customers from being able to find information regarding, contact, place online orders, or make online inquiries of Plaintiff Alolabi's restaurants.

61.     Cotrim's conduct was clearly calculated to divert online orders, contacts, inquiries, and business opportunities that would have gone to Plaintiff Alolabi's restaurants. Defendants knew that such interference was certain or substantially certain to occur, and Cotrim's conduct was independently tortious and unlawful as described throughout this Complaint.

62. As a direct result of Cotrim actions, Napoli lost and continues to suffer recoverable damages, including actual damages, consequential damages, and lost profits.

63. Because Cotrim's conduct was intentional and malicious, Napoli is also entitled to, and seeks, exemplary damages.

## CLAIM VII – TEXAS THEFT LIABILITY ACT,
## TEX. CIV. PRAC. & REM. CODE §§ 134.001-134.005

64. Plaintiffs hereby adopt and reallege each and every allegation previously set forth in this Complaint as if set forth fully at length here.

65. Plaintiff Alolabi is the rightful owner of the Napoli domain, website, and online orders and inquiries made through the website, and/or has possessory rights in each of these items greater than any attributable to Cotrim.

66. Additionally, Plaintiff Alolabi is the rightful owner of the Napoli Facebook page and/or has possessory rights in the Napoli Facebook page greater than any attributable to Cotrim.

67. The Napoli domain, website, all online orders and inquiries made through the website, and the Napoli Facebook page constitute personal property for purposes of the Texas Theft Liability Act. *See* Tex. Civ. Prac. & Rem. Code § 134.002(2) (defining "theft" for purposes of the Act to include unlawfully appropriating property under Section 31.03); Tex. Pen. Code § 31.01(5)(B) (defining property for purposes of theft offenses under Chapter 31 to include both tangible and intangible property); *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 640 (Tex. 2000) (stating that personal property includes everything that is subject to ownership not falling under the definition of real estate).

68. Defendants committed offenses falling within the scope of the Texas Theft Liability Act by using deceptive means to unlawfully appropriate and deprive Napoli of their domain and website. Cotrim obtained unauthorized access to the domain and website, and

thereby brought about a transfer or purported transfer of title to the Napoli domain and website with the intent to deprive Napoli of its property. *See* Tex. Pen. Code § 31.01(4)(A). Similarly, Defendants unlawfully appropriated, retained, and exercised control over the online orders, inquires, corresponding proceeds and profits, and the Napoli Facebook page through their unlawful access to and transfer of the Napoli domain and website, their ongoing exercise of dominion and control over the Napoli domain, website, and Napoli Facebook page to the exclusion of Plaintiffs, conduct which also falls within the scope of the Texas Theft Liability Act. *See id*. § 31.01(4)(B).

69.     Cotrim's appropriation of the property was unlawful in that it was without Plaintiffs' effective consent. Plaintiffs did not assent in fact to Cotrim's appropriation of the Napoli domain, website, online orders, inquiries, the corresponding profits from catering and sales through the Napoli website, and the Napoli Facebook page. Instead, Cotrim obtained access through deception, including but not limited to the use of statements that created or confirmed a false impression of fact that affected the judgment of Plaintiffs and their agents, the failure to correct a false impression of fact that was likely to affect the judgment of Plaintiffs and their agents, and preventing Plaintiffs and their agents from acquiring information likely to affect their judgment. Defendants are accordingly liable to Plaintiffs for under the Texas Theft Liability Act ("TTLA"), Tex. Civ. Prac. & Rem. Code §§ 134.001-005.

70.     As a direct result of Cotrim's misconduct, Plaintiff Alolabi suffered actual damages, consequential damages, and lost profits, which they seek to recover in this action. Plaintiffs also seek statutory damages, costs, and attorneys' fees, as permitted under the TTLA.

71.     Because Cotrim conduct was malicious and/or reckless, Plaintiff Alolabi is also entitled to, and seeks, exemplary damages.

## CLAIM VIII – BREACH OF CONTRACT

72.     Plaintiffs adopt by reference and incorporate the allegations set forth above as if fully set forth at length here.

73.     As detailed in this Complaint, Plaintiffs and Defendants entered into valid and enforceable agreements for payments and fees in consideration of and in connection with sale of the Napoli #6 and Napoli #7 restaurant locations which authorized Defendants to use Plaintiff Alolabi's trade secret information as well as the trademark, service mark, trade dress, and/or trade names identified with Plaintiff Alolabi's restaurants and protected under both federal and state law.

74.     Plaintiffs have performed, tendered performance, or were excused from performing each of their respective obligations under the applicable agreements with Defendants.

75.     As discussed herein, Defendants have not complied with the terms of the agreements applicable to the sale of the Napoli #6 and Napoli #7 restaurants, and are in default on the promissory notes given by Defendants for the purchase of the Napoli #6 restaurant. As a result, Plaintiffs have suffered substantial damages, incurred attorney's fees, and are entitled in legally enforce the "Clawback" provision in the promissory notes executed for the purchase of the Napoli #6 restaurant.

76.     Plaintiffs are accordingly entitled to recover their damages, and also are entitled to recover reasonable and necessary attorney fees under Texas Civil Practice & Remedies Code Chapter 38.

## VI.     PLAINTIFF'S REQUEST FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION

77.     Plaintiffs adopt by reference and incorporate the allegations set forth above as if fully set forth at length here.

78.     In accordance with the provisions of Federal Rule of Civil Procedure 65, Plaintiff Alolabi requests a temporary restraining order and preliminary injunction to remedy Defendants' misappropriation of the Napoli domain, domain name, website, web pages, and Facebook page, as described in this Complaint.[5]  Injunctive relief as requested by Plaintiff is authorized under both general equitable principles and federal statutes creating Plaintiffs' causes of action.  See 15 U.S.C. § 1116(a) (authorizing injunctive relief to prevent violations of Lanham Act §43(a)); 18 U.S.C. § 1030(g) (authorizing injunctive relief under the Computer Fraud and Abuse Act); 18 U.S.C. § 2707(b)(1) (authorizing preliminary and other equitable relief under the Stored Wire and Electronic Communications and Transactional Records Access Act); *eBay, Inc. v. Merc-Exchange, L.L.C.*, 547 U.S. 388, 391 (2006) (noting that the requirements for obtaining injunctive relief are founded on "well-established principles of equity").

79.     To be entitled to a temporary restraining order and/or preliminary injunction, the plaintiff seeking relief must demonstrate:  (i) a substantial likelihood of success on the merits; (ii) a substantial threat of immediate and irreparable harm for which it has no adequate remedy at law; (iii) the threatened injury to the plaintiff outweighs any harm that the temporary restraining order or injunction might cause the defendant; and (iv) the requested relief will not disserve the

---

[5] The injunctive relief requested by Plaintiffs is both prohibitory (as directed against Defendants' solicitation of franchisees) and mandatory (regarding the return of control over the Napoli domain, website, and Facebook page).  Both prohibitory and mandatory injunctive relief is authorized under Federal Rule of Civil Procedure 65.  *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 178 n. 4 (1973); *see also Mondis Tech. Ltd. v. Chimel Innolux Corp.*, No. 2:11-cv-378-JRG, 2012 WL 1554645, at *6 (E.D. Tex. Apr. 30, 2012) (noting that "[t]he Supreme court has explicitly rejected the argument that application of Rule 65 is limited to prohibitory injunctions," and quoting from *Golden State Bottling Co.*).  Both the mandatory and prohibitory provisions requested here are appropriate because they preserve the status quo, which for purposes of injunctive relief is defined as the last actual, peaceable, noncontested status that preceded the controversy that is the subject matter of this litigation.  *See LaRouche v. Kezer*, 20 F.3d 68, 74 n.7 (2d Cir. 1994) (quoting the definition of "status quo" to be preserved by preliminary injunction from Black's Law Dictionary 1410 (6th ed. 1990)); *see also In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (noting that the "status quo" for purposes of a TRO under Texas law is defined as "the last, actual, peaceable, non-contested status which preceded the pending controversy")

public interest.  E.g. West Alabama Quality of Life Coal. v. U.S. Fed. Highway Admin., 302 F.

Supp. 2d 672, 679 (S.D. Tex. 2004).

### Likelihood of Success on the Merits

80.     The substantial likelihood of success on the merits is readily established by the

factual allegations set forth in the attached affidavits of Plaintiff Zachery Alolabi and James

Eisenlohr, which make clear that Defendant Cotrim exceeded his authorized access to the Napoli

domain, website, and Facebook page, wrongfully excluded Plaintiffs from further access and

control, and misappropriated the Napoli domain, website, and Facebook page for the exclusive

use, benefit, and control of Defendants.  See Exhibits 4 and 9.  This unlawful and tortious

exercise of dominion and control over the Napoli domain and website, the corresponding access

to and retention of online orders and inquiries for the Defendants' sole benefit, and the

corresponding interference with Plaintiffs' ability to receive online orders and inquiries and

resulting damages, provide ample grounds for Plaintiffs' claims for conversion, tortious

interference with prospective business relations, and violations of the Computer Fraud and

Abuse Act and the Stored Communications Act.

81.     Additionally, Defendants misappropriation of the Napoli domain, website, and

Napoli Facebook page, as described above and substantiated by the attached affidavits of

Plaintiff Alolabi and James Eisenlohr, establishes a substantial likelihood that Plaintiffs will

recover on their claims brought under the Texas Theft Liability Act.

### Immediate and Irreparable Harm

82.     The continued misappropriation of the Napoli domain, website, and Napoli

Facebook page, to the exclusion of Plaintiff Alolabi, poses an ongoing threat of immediate and

irreparable harm.  Repeat customers have been accustomed to placing orders with Plaintiff

Alolabi's restaurants through the Napoli website, and have complained of confusion and frustration at not being able to contact Plaintiffs' restaurants and place online orders with Plaintiffs through the Napoli website.  See Exhibit 4.  Plaintiff Alolabi's affidavit establishes harm to the business goodwill of repeat customers caused by Defendants' misappropriation of the Napoli domain and website, and the resulting increased difficulty in placing online orders and inquiries with Plaintiffs' restaurants.  *See Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 486 (5th Cir. 2004) (noting that plaintiff may rely on "anecdotal instances of customer confusion" as proof that defendant's use of mark is likely to cause confusion among consumers).  As such, this loss of customer goodwill constitutes immediate and irreparable injury that supports the issuance of injunctive relief.  *Lason Servs., Inc. v. Rathe*, No. Civ.A.3:02CV2110-D, 2003 WL 21728184, at *7 (N.D. Tex. Mar. 14, 2003) (mem. op.); *see also Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992) (noting that "[t]he loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute").

83.    Defendants' misappropriation of Napoli's domain and website has clearly caused Plaintiff Alolabi's to lose some thousands of dollars of online orders, see Exhibit 4, but there is no way to precisely quantify the total amount of Plaintiffs' losses to date.   Likewise, the continued loss of online orders and inquiries that would otherwise come to Plaintiff Alolabi's restaurants through the Napoli website in the future can only be estimated based on past sales for a comparable period of time.   This inherent inability to precisely measure the amount of Plaintiff's losses constitutes irreparable injury, as it is harm "for which monetary damages would be 'especially difficult to calculate.'"  *Heil Trailer Int'l Co. v. Kula*, 542 F. App'x 329, 335 (5th Cir. 2013); *see also Lakedreams v. Taylor*, 932 F.2d 1103, 1109 (5th Cir. 1991) (noting that

irreparable harm may be appropriately found "when economic rights are especially difficult to calculate"); *Allied Mktg. Group, Inc. v. CDL Mktg., Inc*., 878 F.2d 806, 810 n.1 (5th Cir. 1989) (stating that "a finding of irreparable harm is appropriate even where economic rights are involved when the nature of those rights makes establishing the total amount of the loss "especially difficult or speculative").

84.     Additionally, the evidence demonstrates Defendants' use the website as a tool for infringing and/or diluting Plaintiffs' protected trademark, service mark, trade dress, and/or trade name interests.   Defendants purport to offer franchise opportunities through the website, as evidenced by Exhibit 5, in violation of Plaintiff Alolabi's rights.   Injunctive relief against Defendants is necessary to prevent dilution and confusion in respect to Plaintiff's protected interests.   See 15 U.S.C. § 1125(c)(1) (providing that party is entitled to injunction under Lanham Act against anyone who commences use of a mark or trade name that is likely to cause dilution); *see also Choice Hotels Int'l, Inc. v. Patel*, 940 F. Supp. 2d 532, 543 (S.D. Tex. 2013) (noting that money damages cannot adequately compensate for unauthorized use of trademark).

## No Adequate Remedy at Law

85.     Plaintiff Alolabi has no adequate remedy at law for the same reason his damages are irreparable, i.e., the full extent of the harm to their interests stemming from Defendants' conduct is intangible and not subject to precise quantification.   *E.g., Choice Hotel Int'l*, 940 F. Supp. 2d at 543 (noting that loss of goodwill and reputation cannot be easily quantified, leaving plaintiff with "no adequate monetary remedy"); *see also Tate v. Am. Tugs, Inc*., 634 F.2d 869, 871 (5th Cir. 1981) (noting that "[o]ften times the concepts of 'irreparable injury' and 'no adequate remedy at law' are indistinguishable").

86.     Additionally, Defendants' unlawful solicitation of franchisees through the misappropriated Napoli website, infringing on Plaintiff Alolabi's interests protected under the Lanham Act and Chapter 16 of the Texas Business & Commerce Code, is further grounds for finding no adequate remedy at law.  *See Choice Hotels Int'l*, 940 F. Supp. 2d at 543 (indicating that loss of control by infringement of protected interests demonstrates no adequate remedy at law, because "monetary damages cannot adequately compensate for the unauthorized use of the marks").

### Harm to Plaintiff Outweighs Harm to Defendants

87.     The harm faced by Plaintiffs outweighs the harm that would be sustained by Defendants if a temporary restraining order and injunctive relief is not granted.  Plaintiff Alolabi has a strong interest in protecting the established Napoli name, reputation, and goodwill with repeat customers.  By way of contrast, the relief requested by Plaintiffs will have no negative impact whatsoever on the interests of Defendants.  Instead, Plaintiff Alolabi's requested relief only require the Defendants to return control over the misappropriated Napoli domain and website, and otherwise comply with federal and state law.  Accordingly, the balance of equities here clearly warrants issuance of the temporary restraining order and injunctive relief.  See, e.g., Choice Hotels Int'l, 940 F. Supp. 2d at 543 (finding that defendant's alleged hardship in complying with state and federal law paled in comparison with the irreparable harm that plaintiff would have suffered by continued trademark infringement); Coach, Inc. v. Sassy Couture, No. SA-10-CV-601-XR, 2012 WL 162366, at *12 (W.D. Tex. Jan. 19, 2012) (noting in trademark infringement case that irreparable harm to plaintiffs outweighed defendants' burden of "bring[ing] their business into compliance with federal law").

**No Adverse Effect on Public Interest**

88.     Issuance of a preliminary injunction would not adversely affect the public interest and public policy.    Indeed, with regard to Defendants' infringing and diluting conduct "the public interest is best served by preventing confusion [from trademark infringement] in the marketplace," and "an injunction is the usual and standard remedy once trademark infringement has been found." *Namer v. Broadcasting Bd. of Governors*, No. 12-2232, 2014 WL 5780539, at *19 (E.D. La. Nov. 5, 2014); *see also Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.*, 83 F. Supp. 2d 810, 832 (S.D. Tex. 1999) (stating that "[t]he public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks").

89.     With regard to possession, ownership, and control of the Napoli domain, website, and Facebook page, Plaintiff Alolabi represents he will abide by the original terms and intent of his oral agreement with Defendant Cotrim.    Plaintiff Alolabi further represents he will not improperly alter or delete information regarding the Napoli #6 and Napoli #7 restaurants, nor will he impede the online ordering capabilities pertaining to the Napoli #6 and Napoli #7 restaurants except as may be agreed in writing or subsequently ordered by this Court during the pendency of this litigation.    Accordingly, a temporary restraining order and preliminary injunction regarding these issues can only be beneficial to the public interest, in that it will make it easier for the public to find desired information, place online orders, and make inquiries of Plaintiffs' restaurants with no detrimental effect on the same for Defendants' restaurants.

**Bond**

90.     Plaintiff Alolabi is willing to post a bond in the amount the Court deems appropriate.

**Request for Permanent Injunction**

91.     Plaintiff Alolabi asks the Court to set its application for injunctive relief for a full trial on the issues in this application and, after trial, to issue a permanent injunction against Defendants.

**VII.     PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Alolabi and Napoli respectfully requests and prays that the Court issue a temporary restraining order and preliminary injunction as follows:

1.      Defendant Cotrim shall take all steps necessary to transfer the Napoli domain (www.napolirestaurants.com) to Plaintiff Alolabi's GoDaddy account by a date specified by the Court;

2.      Defendant Cotrim shall return complete and exclusive access and control for the Napoli restaurants website (hosted by GoDaddy.com and accessed through the Napoli domain, www.napolirestaurants.com) to Plaintiff Alolabi and/or an individual designated by Plaintiff Alolabi by a date specified by the Court, so that Plaintiff Alolabi can restore the information regarding his restaurants to the Napoli restaurants website and reestablish online ordering and inquiry capabilities for his restaurants on the website, and can secure access to the website to prevent further tampering by Defendants.

3.      Defendant Cotrim shall designate Plaintiff Alolabi, and/or an individual designated by Plaintiff Alolabi, as having administrator privileges on the Napoli Facebook page found at www.facebook.com/NapoliRestaurantTX by a date specified by the Court, so that Plaintiff Alolabi can restore the information regarding his restaurants to the Napoli Facebook page and can change the

privilege settings for the Napoli Facebook page to prevent further tampering by Defendants.

4.      Defendants shall cease and desist from soliciting franchisees for restaurants under the Napoli names, shall not hold themselves out as having any authority to grant such franchises, and shall not claim to have any rights to the 'Napoli', 'Napoli Restaurants' and 'By Pappa Zack' names or other trademarks, service marks, trade dress, and/or trade names associated with Plaintiff Alolabi's Napoli restaurant businesses beyond the right to use them as licensees under their respective agreements with Plaintiffs.

5.      Defendants shall not disseminate, distribute, or use any trade secret information acquired in connection with the purchase of the Napoli #6 and Napoli #7 restaurants (including trade secret recipes, recipe books, ingredient lists, and supplier lists) except as specifically authorized by the Asset Purchase Agreements for the continued operation of the Napoli #6 and Napoli #7 restaurants.

Plaintiffs further request that, upon a final hearing of this cause, the Court enter judgment for Plaintiffs against the Defendants for an amount to be determined at trial, plus attorneys' fees, court costs, and pre- and post-judgment interest at the maximum rate permitted by law.  Plaintiffs also ask that the Court include in its judgment:

6.       A permanent injunction against further attempts to misappropriate the Napoli domain, website, and Facebook page, as described above.

7.      A permanent injunction against Defendants' further solicitation of franchisees under the Napoli name, holding out themselves has having authority to grant such franchises, and claiming to have any rights to the 'Napoli', 'Napoli Restaurants'

and 'By Pappa Zack' names or other trademarks, service marks, trade dress, and/or trade names associated with Plaintiff Alolabi's Napoli restaurant businesses beyond the right to use them as licensees under their respective agreements with Plaintiffs.

8.     A provision directing Defendants to assign and convey a controlling interest in Defendant WCX, LLC, in accordance with the "Clawback" provisions of the promissory notes executed by Defendants for the purchase of the Napoli #6 restaurant.

In addition to the foregoing, Plaintiffs respectfully request that the Court grant such other and further relief as to which they may be justly entitled.

Respectfully submitted,

FAUBUS KELLER & BURFORD LLP

By:    /s/ Brian M. Keller
          Brian M. Keller
          Fed. Bar No. 17095
          State Bar No. 00784376
          1001 Texas Avenue, 11th Floor
          Houston, Texas 77002
          (713) 222-6400
          (713) 222-7240 – Fax
          brian@fkblawfirm.com
          Attorney-In-Charge for Plaintiffs